**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION**

| | |
|---|---|
| CALVIN HENRY FAIR,            ) | |
|                 Plaintiff,      ) | |
|                               ) | No. 8:15-cv-4471-DCN |
|             vs.                          ) | |
|                               ) | **ORDER** |
| NANCY A. BERRYHILL, *Acting* ) | |
| *Commissioner of Social Security*, ) | |
|                 Defendant.    ) | |

This matter is before the court on United States Magistrate Judge Jacquelyn D. Austin's Report and Recommendation ("R&R") that this court affirm Acting Commissioner of Social Security Nancy A. Berryhill's (the "Commissioner") decision denying plaintiff Calvin Henry Fair's ("Fair") application for social security insurance benefits ("SSI"). For the reasons set forth below, the court adopts the R&R and affirms the Commissioner's decision.

## I. BACKGROUND[1]

### A. Procedural History

Fair filed an application for SSI on November 14, 2012, alleging disability beginning December 31, 2005. The Social Security Administration denied Fair's claim initially and on reconsideration. Fair requested a hearing before an administrative law judge ("ALJ"), and ALJ Marcus Christ held a hearing on April 22, 2014. The ALJ issued a decision on May 19, 2014, finding that Fair was not disabled under the Social Security Act (the "Act"). Fair requested Appeals Council review of

---

[1] Unless otherwise noted, the following background is drawn from the R&R.

1

the ALJ's decision. The Appeals Council declined to review the decision, rendering the ALJ's decision the final action of the Commissioner.

On November 4, 2015, Fair filed this action seeking review of the ALJ's decision. The magistrate judge issued an R&R on January 5, 2017, recommending that this court affirm the ALJ's decision. Fair filed objections to the R&R on January 18, 2017, and the Commissioner responded to Fair's objections on January 24, 2017. The matter is now ripe for the court's review.

### B.     Medical History

Because Fair's medical history is not directly at issue here, the court dispenses with a lengthy recitation thereof and instead notes a few relevant facts. Fair was born on August 6, 1969 and was 43 years old on the date his application was filed. He communicates in English and has a limited education.

### C.     ALJ's Decision

The ALJ employed the statutorily required five-step sequential evaluation process to determine whether Fair had been under a disability since the date his application was filed. The ALJ first determined that Fair had not engaged in substantial gainful activity during the relevant time period. At step two, the ALJ found that Fair suffered from the following severe impairments: degenerative disc disease, intellectual deficits, post-traumatic stress disorder, and major depression. At step three, the ALJ determined that Fair's impairments did not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). Before reaching the fourth step, the ALJ determined that Fair had the residual functional capacity ("RFC") to perform:

> [l]ight work (described as requiring lifting and carrying 20 pounds occasionally and 10 pounds frequently as well as an ability to stand, sit, and walk each for 6 hours in an 8-hour workday) with occasional climbing of ladders, ropes and scaffolds; frequent climbing [of] ladders and ramps, crouching, stooping; occasional kneeling and crawling; frequent (as opposed to constant) overhead reaching; and no exposure to unprotected heights.

R. 14. Additionally, the ALJ determined that Fair's RFC was "limited to simple, routine tasks in a low stress work environment (described as involving only occasional changes in work setting and not involving production rate or fast-paced work) with only occasional interaction with the public and co-workers." Id. At step four, the ALJ found that Fair was unable to perform past relevant work as a laborer, but based on his age, education, RFC, and the testimony of a vocational expert, Fair could perform certain jobs that existed in significant numbers in the national economy. Therefore, the ALJ concluded that Fair had not been under a disability within the meaning of the Act since the date of his application for SSI.

## II. STANDARD OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 149–50 (1985). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270–71 (1976).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." Hays v.

Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (internal citations omitted). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Id. Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]," not on the reviewing court. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citation omitted). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987)

### III.  DISCUSSION

Fair objects to the R&R's conclusion that the ALJ properly determined that his mental impairments did not meet the criteria set out in former Listing 12.05C.[2] Listing 12.05C provides, in relevant part:

> [Intellectual Disability]: [Intellectual disability] refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

---

[2] Listing 12.05C was deleted from the Listings as of January 17, 2017, pursuant to the final rule on Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138 (Sept. 26, 2016). However, because 81 Fed. Reg. 66138-01 clearly states that the SSA does not intend for the court to apply the revised Listings retroactively in evaluating final agency decisions rendered prior to January 17, 2017, the court will analyze this case as if Listing 12.05C were still in effect. See Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138 n.1 (Sept. 26, 2016) ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").

> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C. A valid verbal, performance, or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

Rothrock v. Colvin, 2016 WL 1175189, at *4 (M.D.N.C. Mar. 23, 2016).[3] Thus, Listing 12.05C may be broken up into three prongs, requiring a claimant to show: (1) "deficits in adaptive functioning initially manifested during the developmental period"; (2) "[a] valid verbal, performance, or full scale I.Q. of 60 through 70"; and (3) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." Hancock v. Astrue, 667 F.3d 470, 473 (4th Cir. 2012) (quoting Listing 12.05C).

The ALJ determined that Fair could not meet the requirements of Listing 12.05C because he failed to show that he had a valid I.Q. score between 60 and 70.[4] Tr. 14. In reaching this decision, the ALJ relied on the three sets of I.Q. scores ranging from 71 to 82, which Fair received between 1979 and 1982, to discount the value of his single full-scale I.Q. score of 69 in 1986. Id. The ALJ observed that

---

[3] "Effective September 3, 2013, the Social Security Administration replaced the term 'mental retardation' with 'intellectual disability' in the Listings." Rothrock, 2016 WL 1175189, at *4 n.5. Nevertheless, the Rothrock decision used the term "mental retardation" to reflect the language of the Listing at the time of the ALJ's decision. Id. ("Because the underlying administrative proceedings concluded and this judicial action commenced before that regulatory change, this Recommendation utilizes the prior nomenclature."). This change in terminology had already gone into effect at the time the ALJ issued its decision in this case—May 19, 2014. Therefore, the court utilizes the term "intellectual disability."

[4] Fair points out that the ALJ did not state that his I.Q. test results were invalid, but simply stated that there was no "clear evidence that [he] [had] a valid I.Q. score of 60 through 70." However, because the claimant bears the burden of showing the existence of a disability, Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), the court finds that Fair's distinction has no practical effect on the analysis.

5

there was no evidence of a disorder that would explain such a decline.  Id.  The ALJ also acknowledged that Fair received a full-scale I.Q. score of 56 in 2009, but relied the opinion of Dr. Sherry Rieder—the psychologist who administered the test—to find that the 2009 I.Q. scores were the result of malingering, and therefore, invalid.  Id.

Fair highlights four pieces of evidence which he contends the ALJ failed to adequately consider in evaluating his I.Q. score:  (1) the head trauma resulting from a March 12, 2008 incident in which he was attacked by the police, (2) the Charleston County School District's ("CCSD") determination that he was "educably mentally handicapped" in 1986, (3) agency consultant Dr. Gene Sausser's ("Dr. Sausser") statement that he "suspected that [Fair] suffered from 'mental retardation,'" and (4) the pain caused by his other mental and physical impairments.  Pl.'s Objections 2–3.  None of these considerations are sufficient to disturb the ALJ's decision.

The facts Fair relies on in challenging the ALJ's decision are largely irrelevant to the 12.05C analysis, and to the extent they are relevant, they were accounted for in the I.Q. tests the ALJ actually discussed.  Despite the fact that Fair's objections focus on the I.Q. prong of Listing 12.05C, he barely acknowledges any of the five I.Q. test results in the record.  Tr. 260, 309, 311.  Instead, Fair asks the court to infer an I.Q. score of between 60 and 70 from various pieces of circumstantial evidence.  The court is unaware of any authority supporting such an analysis, and was unable to find any cases in this circuit that evaluated the I.Q. prong of Listing 12.05C without reference to actual I.Q. test results.  Thus, the court has serious doubts about whether a claimant can satisfy the I.Q. requirement of Listing 12.05C without citing an actual

6

I.Q. score.  Cf. Hancock, 667 F.3d at 475 (noting that the ALJ ordered an I.Q. examination "because [Listing 12.05C] required a current I.Q. score and no score was in the record").

Even if this method of proof is somehow permissible, the evidence Fair cites in his objections fails to undermine the substantial evidence supporting the ALJ's conclusion.  First, Fair contends that the severe head and brain trauma he suffered in 2008 could have reduced his intellectual functioning.  Pl.'s Objections 2.  But Fair fails to offer any evidence of what he believes his post-2008 I.Q. actually is.  Though he does not explicitly discuss his 2009 I.Q. test results, Fair appears to suggest that his 2008 attack provides an explanation for why his I.Q. scores showed an uncharacteristic decline between 1986 and 2009.  To the extent this is an attempt to argue that the ALJ should have considered the effect of Fair's 2008 attack before rejecting the 2009 I.Q. scores, the court finds that it is without merit.  The ALJ did not need to address the 2008 attack because it was clearly considered by Dr. Rieder, who noted Fair's account of the incident in the "History of Presenting Problem" section of the report.  Tr. 259.  Despite being well aware of the 2008 attack, Dr. Rieder determined that Fair's 2009 I.Q. scores were the result of his "suboptimal effort" during the test and concluded that the test results were "a significant underestimate of [Fair's] cognitive abilities."  Id.  Thus, it was not error for the ALJ to rely on Dr. Rieder's assessment because that assessment already accounted for the 2008 attack.[5]

---

[5] In a separate section of his objections, Fair argues that Dr. Rieder's conclusion that his intellectual abilities were at least in the borderline range suggests that his true I.Q. score is between 60 and 70.  Pl.'s Objections 3.  However, the

Fair's attempt to rely on the CCSD's 1986 determination that he was "educably mentally handicapped" is also problematic. This language comes from the same Psychological Evaluation in which Fair received a full scale I.Q. score of 69. Tr. 310. In fact, the "educably mentally handicapped" determination was directly related to this I.Q. score. Id. ("Calvin's performance on the [I.Q. test] now falls within the range of educably mentally handicapped."). As noted above, the ALJ explicitly addressed this I.Q. score, concluding that Fair failed to carry his burden to show that it was valid because it was inconsistent with the three I.Q. scores he received between 1979 and 1982. Tr. 14. "This circuit permits an ALJ to weigh conflicting I.Q. test results." Hancock, 667 F.3d at 474. An ALJ may

> reject [I.Q. scores properly obtained by a licensed psychologist] if they are inconsistent with other substantial evidence in the record such as conflicting professional opinions or other record evidence indicating that the claimant is historically higher achieving or has more advanced functional capacities than would be expected from someone with a below-average I.Q.

Rivers v. Astrue, No. 8:10-cv-00314, 2011 WL 2581447, at *4 (D.S.C. June 28, 2011) (quoting Maybank v. Astrue, No. 4:08-cv-0643, 2009 WL 2855461, at *11 (D.S.C. Aug. 31, 2009)). That is exactly what the ALJ did in this case, rejecting the 1986 I.Q. results in favor of the three results obtained between 1979 and 1982. Tr. 14. Because the CCSD's conclusion that Fair was "educably mentally handicapped" was integrally tied to the 1986 I.Q. results that the ALJ properly rejected, the court

---

Diagnostic and Statistical Manual of Mental Disorders (DSM–IV) defines "borderline intellectual functioning" "as an I.Q. in the 71–84 range." Bailey v. Colvin, 2015 WL 1467053, at *3 (S.D.W. Va. Mar. 30, 2015) (quoting AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 684 (4th ed. 1994)). Moreover, Dr. Rieder's use of the phrase "at least," indicates she thought Fair's I.Q. might be above the borderline range. Tr. 262.

8

finds that it does not undermine the ALJ's conclusion that Fair failed to satisfy the requirements of Listing 12.05C.

Fair also attempts to argue that Dr. Sausser's "suspicion" that he suffers from "mental retardation" shows that his I.Q. is between 60 and 70, because, in Fair's view, "an individual with an I.Q. between 60–70 would be considered 'mentally retarded.'" Pl.'s Objections 3. However, Dr. Sausser only <u>suspected</u> "mental retardation," Tr. 290, so any evidence Dr. Sausser's opinion might provide on the issue is rather marginal in the face of three valid I.Q. tests showing Fair to be in the 70 to 80 range. Moreover, it is notable that Fair fails to explain why Dr. Sausser's use of the term "mental retardation" necessarily implies an I.Q. score between 60 and 70. But even if Dr. Sausser's use of the term does connote the existence of an I.Q. score below 70,[6] the court finds that because Dr. Sausser merely "suspected" such a diagnosis, his opinion is too speculative to satisfy the I.Q. prong of Listing 12.05C. Therefore, it was not error for the ALJ to ignore Dr. Sausser's evaluation in the 12.05C analysis.

Finally, Fair argues that the ALJ failed to account for the effect of his pain in determining his level of intellectual functioning.[7] Pl.'s Objections 3. Fair contends

---

[6] The court notes that this is consistent with the definition of "mild mental retardation" under the DSM IV. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 49 (4th ed. 2000)).

[7] The court assumes Fair is objecting to the ALJ's failure to discuss his pain symptoms in analyzing his I.Q. scores under Listing 12.05C. However, Fair does not cite any authority in connection with this argument or address any particular finding by the ALJ. To the extent Fair intends to address some other aspect of the ALJ's decision, the court finds that his argument is too vague to warrant consideration. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003) ("[P]etitioner's failure to object to the magistrate judge's recommendation with the specificity required by [Federal Rule

that the combined effect of his "pain, depression, and anxiety" should have been considered in evaluating his I.Q. Id. Fair cites no authority for this proposition. While it is true that the ALJ must consider the combined effects of a claimant's impairments, Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989), the court is not convinced that the ALJ must consider the combined effects of a claimant's impairments in evaluating I.Q. scores under the I.Q. prong of Listing 12.05C. See Campbell v. Barnhart, 2002 WL 32595046, at *10 (E.D. Va. Aug. 15, 2002), aff'd, 56 F. App'x 167 (4th Cir. 2003) (rejecting argument that the ALJ failed to consider combined effect of the plaintiff's impairments with respect to Listing 12.05C and concluding that "[s]ince plaintiff's I.Q. scores were all above 70, there would be no basis for a finding of disability by defendant under the first prong of Listing 12.05C"). Supposing pain could be considered in the I.Q. evaluation, Fair still failed to present any evidence of what effect his pain actually had on his intellectual functioning. The court finds that the ALJ did not err by failing to address Fair's pain when evaluating his I.Q. scores under Listing 12.05C.

---

of Civil Procedure 72(b)] is, standing alone, a sufficient basis upon which to affirm the judgment of the district court.").

## IV.  CONCLUSION

Based on the foregoing, the court **ADOPTS** the magistrate judge's R&R, and **AFFIRMS** the Commissioner's decision.

**AND IT IS SO ORDERED**.

                    **DAVID C. NORTON**
                    **UNITED STATES DISTRICT JUDGE**

**February 27, 2017**
**Charleston, South Carolina**